UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RENEE M. LEWIS, | ) | |
| | ) | |
|        *Plaintiff* | ) | |
| | ) | |
| v. | ) | Docket No. 06-35-B-W |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|        *Defendant* | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal returns to this court after an earlier remand of this case to the Social Security Administration. Her prior appeal raised the question whether substantial evidence supported the commissioner's determination that she could return to her past relevant work as a fish packer. *See Lewis v. Barnhart*, No. 04-62-B-W, 2004 WL 2677211, at *1 (D. Me. Nov. 24, 2004) (rec. dec., *aff'd* Dec. 14, 2004). The court concluded that it did not. *See id.* Following remand and rehearing, she was found capable of making an adjustment to work existing in significant numbers in the national economy. *See* Record at 450-51. The plaintiff, who alleges disability stemming from fibromyalgia, depression, anxiety, gastritis and bilateral carpal tunnel syndrome, now challenges the substantiality of

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 1, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

the evidence supporting that finding. I recommend that the decision of the commissioner be vacated and the case again be remanded for further proceedings.

Following remand and rehearing, and in accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the medical evidence established that the plaintiff had fibromyalgia, an impairment that was severe but did not meet or equal those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 3, Record at 460; that she retained the residual functional capacity ("RFC") to perform the exertional demands of light work, with her capacity for the full range of such work diminished by (i) an inability to climb ramps or stairs, balance, stoop, kneel, crouch or crawl more than occasionally and (ii) a need to avoid concentrated exposure to extremes of cold or hot, vibration and hazardous work environments such as heights, moving machinery or uneven work surfaces, Finding 5, *id.*; that she could not perform her past relevant work as a clerk/stock person, personal care attendant and fish packer, Finding 6, *id.*; that, in view of her age (29 years old, a younger individual), education (some college) and work history (no transferable skills), if she were capable of performing the full range of light work, a finding of not disabled would be reached pursuant to Rule 202.21 of Table 2, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), Findings 7-10, *id.* at 460-61;[2] that, using the Grid as a framework for decision-making, she was capable of making a successful vocational adjustment to work existing in significant numbers in the national economy, Finding 11, *id.* at 461; and that she therefore had not been disabled at any time through the date of decision, Finding 12, *id.*[3] The Appeals Council declined to

---

[2] The administrative law judge stated that a finding of "disabled" would be reached by application of Rule 202.21. *See* Finding 10, Record at 461. That clearly was a typographical error. *See* Rule 202.21 of Table 2 to Grid.

[3] The administrative law judge found that, for purposes of the plaintiff's SSD claim, she had acquired sufficient quarters of coverage to remain insured through at least June 30, 2002. *See* Finding 1, Record at 460. Inasmuch as he found her not to have been disabled at any time through the date of decision, he did not need to consider whether, for purposes of SSD, she was disabled prior to her date
*(continued on next page)*

review the decision, *id*. at 439-41, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981; 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff argues that the administrative law judge erred on several bases in both his RFC and Step 5 analyses. *See generally* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 8).[4] I agree that, on the basis of errors at Step 5, reversal and remand is warranted. For the benefit of the parties on remand, I briefly consider the plaintiff's remaining points of error as well.

---

last insured.

[4] Each of the plaintiff's points of error subsumes at least two discrete arguments. *See generally* Statement of Errors. Counsel is reminded to break each separate argument into a separate point of error.

3

## I. Discussion

### A. Asserted Step 5 Errors

During the plaintiff's February 3, 2005 rehearing, vocational expert Warren Maxim testified that a person with the RFC posited by the administrative law judge could perform the jobs of newspaper carrier and personal care attendant ("PCA")/companion. *See* Record at 465, 493-94, 500-02, 505. Maxim was unable to answer certain questions posed with respect to those positions; however, he agreed to undertake follow-up research and provide his results. *See, e.g., id.* at 503-04, 508. By letter to the administrative law judge dated February 13, 2005 he supplemented his hearing testimony. *See id.* at 562-63 (labeled Exh. No. 21E). The letter indicates it was copied to Henry Benoit, Esq. (rather than the plaintiff's counsel, Francis M. Jackson). *See id.* at 563.

Jackson represents that, normally, administrative law judges tender post-hearing evidence to plaintiffs' counsel under cover of a so-called "proffer letter," a sample of which he appends to the Statement of Errors. *See* Statement of Errors at 10; Exh. A thereto. That letter, in turn, details actions a claimant can take in response to proffered post-hearing evidence, including submitting materials (written comments, a written statement as to facts and law the claimant believes apply to the case in light of the proffered evidence, additional records, questions to be posed to the author), requesting a supplemental hearing and seeking the opportunity to cross-examine the author of the proffered post-hearing report. *See* Exh. A. There is no indication of record that Jackson ever was provided such a proffer letter with respect to Maxim's post-hearing report. Indeed, Jackson affirmatively represents that he never was provided a copy of the post-hearing Maxim report for purposes of comment or response. *See* Statement of Errors at 10.[5] In finding the plaintiff capable of performing other work

---

[5] Jackson made these representations in his legal brief rather than submitting them in the form of sworn statements. *See* Statement of Errors at 10. Nonetheless, at oral argument, counsel for the commissioner did not dispute their truth.

4

existing in significant numbers in the national economy, the administrative law judge cited not only Maxim's hearing testimony but also his post-hearing report (Exh. No. 21E).  *See* Record at 458-59.

The plaintiff argues that this series of unfortunate events violated her due-process rights; as remedy, she asks that, to the extent the administrative law judge relied on the post-hearing Maxim report, the court disregard the substance of that report in weighing whether the commissioner's Step 5 finding was supported by substantial evidence.  *See* Statement of Errors at 10.

There can be no serious question that the rendering of an adverse decision based in part on post-hearing vocational evidence of which the plaintiff had no notice, and to which she had no opportunity to respond, offends due process.  *See, e.g., Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005) ("Social security hearings are subject to procedural due process considerations.  We have held that an ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report.") (citations and internal punctuation omitted); *Wallace v. Bowen*, 869 F.2d 187, 191-92 (3d Cir. 1988) ("We believe . . . that it is unmistakable under the statute that the Secretary may not rely on post-hearing reports without giving the claimant an opportunity to cross-examine the authors of such reports, when such cross-examination may be required for a full and true disclosure of the facts.") (footnote omitted)[6]; *Tom v. Heckler*, 779 F.2d 1250, 1252 n.2 (7th Cir. 1985) ("The use of an adverse post-hearing vocational report without an opportunity to cross-examine its author and to present rebuttal evidence has been held to violate a claimant's right to due process of law."); *Gurney v. Shalala*, Civ. A. No. 90-10889-NG, 1994 WL 548134, at *8 (D. Mass. Aug. 29, 1994) (noting that, although First Circuit had not addressed issue, "numerous courts have held that the failure to allow a claimant to

---

[6] The statute to which the *Wallace* court refers is 42 U.S.C. § 405(b)(1), *see Wallace*, 869 F.2d at 190-91, which provides, in relevant part, that if a hearing is held, the commissioner "shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse" her findings of fact and decision, *see* 42 U.S.C. § 405(b)(1).
*(continued on next page)*

cross-examine a post-hearing physician violates due process where the Secretary substantially relies upon the report.") (citation and footnote omitted).[7]

Denial of a claim in reliance (or, as some courts phrase it, substantial reliance) on a post-hearing report with respect to which a claimant has not been afforded due-process rights understandably has been considered a serious transgression – serious enough to warrant reversal and remand.  *See, e.g., Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984) (reversing, remanding in part on ground that administrative law judge violated claimant's right to due process in using post-hearing vocational report as primary evidence upon which benefits were denied without affording claimant rights to cross-examine expert and present rebuttal evidence); *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983) (reversing, remanding on basis that administrative law judge relied on post-hearing medical report of which plaintiff had no notice); *Jasmin v. Callahan*, No. 97 CIV. 2429(SS), 1998 WL 74290, at *5 (S.D.N.Y. Feb. 20, 1998) (reversing, remanding on basis that administrative law judge substantially relied on post-hearing evidence submitted by plaintiff's chiropractor, using it to make adverse credibility finding, without affording plaintiff opportunity to confront or respond to letter).

In this case it is fair to say that the administrative law judge relied upon the Maxim post-hearing report.  While some of Maxim's post-hearing report seemingly is innocuous – for example, he provides some data on total numbers of jobs that is identical to or close to that provided at hearing, *compare* Record at 495 *with id*. at 562, he did provide substantive new information upon which the administrative law judge relied to make a finding adverse to the plaintiff.  Maxim had testified at hearing that although the companion/PCA jobs are regarded by the Dictionary of Occupational Titles ("DOT") as having a Specific Vocational Preparation, or SVP, of 3, those jobs either (i) are "on the

6

low end of three[,]" (ii) are "[p]erformed at a two" or (iii) some unspecified number are performed at a 2 while others are performed at a 3. *See id*. at 500-01, 507-08. The question whether the jobs were performed at an SVP of 2 or 3 was hardly a trivial one. The administrative law judge had asked Maxim to assume that the individual in question was a high-school graduate who had completed some college but had no transferable skills. *See id*. at 493-94. Maxim testified that the newspaper job had an SVP of 2, and the administrative law judge later questioned Maxim whether the companion/PCA jobs had an SVP of 2 or less. *See id*. at 494, 499-500. Thus, the administrative law judge impliedly found the plaintiff capable only of unskilled work. *See* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2006) ("SSR 00-4p"), at 245 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."). An SVP of 3 is inconsistent with unskilled work. *See id*. Thus, the plaintiff could be found capable of performing the companion/PCA jobs only to the extent they corresponded to an SVP of 2 rather than 3.[8]

At hearing, Maxim did not cite to any document in support of his testimony that an individual limited to performing work with an SVP of 2 or less could perform the companion/PCA jobs; the only rationale supplied was that "PCA work is a three, but . . . it's on the low end of three. I mean, that's activities of daily living care." Record at 500. Nonetheless, in his post-hearing report, he stated that

---

[7] Inasmuch as appears from my research, the First Circuit still has not addressed this issue.

[8] At oral argument, counsel for the commissioner posited that the plaintiff was in fact capable of performing semi-skilled work, correctly pointing out that, per the commissioner's regulations, a high-school graduate generally is considered able to perform semi-skilled through skilled work. *See* 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4). Nonetheless, the regulations recognize that a claimant's actual educational abilities may be higher or lower depending on such factors as whether his/her skills and knowledge have been unused for a period of time. *See id*. §§ 404.1564(b), 416.964(b). The administrative law judge sought to elicit vocational testimony regarding jobs having an SVP of 2 or less. *See* Record at 458, 499-500. Thus, rightly or wrongly, he implicitly concluded that the plaintiff was limited to performance of unskilled work. The court's task is to review the substantiality of the evidence supporting the decision actually made, not to consider whether the evidence supports a determination the commissioner might have made.

7

he based his view that the knowledge and skills needed to perform the companion/PCA jobs could be gleaned for the most part from activities of daily living "upon a review of the job descriptions in the DOT and a review of the job description in the O*Net, Third Edition, 2004." *Id*. at 562. He noted: "The O*Net lists education/training required as 'short-term on-the-job training.'" *Id*. The administrative law judge set forth these bases for Maxim's view concerning the skill level required to perform the companion/PCA jobs in his decision. *See id*. at 458-59. Thus, in my view, it is fair to say that he relied, or even substantially relied, on a post-hearing report that the plaintiff and her counsel never saw.[9]

In these circumstances, reversal and remand are warranted based on this transgression alone. However, that is not the remedy the plaintiff seeks. Instead, she asks that portions of the post-hearing report upon which the administrative law judge relied be disregarded in weighing the substantiality of evidence supporting the Step 5 determination. *See* Statement of Errors at 10. I reach the same end result – concluding that reversal and remand are warranted – taking the plaintiff's suggested route.

As the plaintiff points out, *see id*. at 10-11, Maxim's hearing testimony did not establish that the job of newspaper carrier exists in significant numbers in the national economy at a so-called "substantial gainful activity" ("SGA") level, as is required at Step 5. *See, e.g., DeCarlo v. Barnhart*, 116 Fed. Appx. 387, 389 (3d Cir. 2004) (at Step 5, "the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity"); *Herrera v. Shalala*, No. 94-50543, 1995 WL 314399, at *1 (5th Cir. May 11, 1995) (same); *see also Stephens v. Barnhart*, 50 Fed. Appx. 7, 9 (1st Cir. 2002) (because administrative law judge concluded plaintiff's work as car-

---

[9] The significance of the O*Net description of the skill level required to perform the companion/PCA jobs is underscored by comparing it with the commissioner's definition of unskilled work. *See* 20 C.F.R. §§ 404.1568(a), 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.").

wash attendant and newspaper seller was "too sporadic to qualify as 'substantial gainful activity,'" it did not meet definition at Step 4 of "past relevant work").

      Maxim testified at hearing that there are 2,032 newspaper-carrier jobs in Maine and 156,000 nationally. *See* Record at 495. He further testified that the carriers whose earnings are at SGA level are those who deliver newspapers by vehicle versus on foot or by bicycle. *See id*. at 496. During questioning by the administrative law judge, he estimated conservatively that a third of all carriers deliver newspaper by car, *see id*.; however, he admitted that he based this opinion on personal observation and was aware of no data confirming it. *See id*. at 496-97. On cross-examination, Maxim again stated that he could cite to no data clarifying what percentage of newspaper-carrier jobs are full-time and/or are performed at SGA level, although he could research the question. *See id*. at 503-04. The administrative law judge asked him to do so. *See id*. at 504. At oral argument, counsel for the commissioner asserted that the administrative law judge was entitled to rely on the expertise of the vocational expert, whose qualifications the plaintiff's counsel had not challenged. Nonetheless, in these circumstances, in which Maxim (i) made clear that his estimate did not stem from his expertise and (ii) was invited by the administrative law judge to research the issue and report back on it, I agree with the plaintiff that Maxim's hearing testimony essentially amounted to speculation concerning the number of newspaper-carrier jobs available at the SGA or full-time level.[10]

      With respect to the PCA/companion jobs, the plaintiff posits – and I agree – that Maxim's hearing testimony was contradictory on its face as to the critical question whether, despite the DOT description of the jobs as having an SVP of 3, they actually were performed at an SVP of 2. *Compare id*. at 500, 507 (PCA work is at low end of 3) *with id*. at 500-01 (PCA work is performed at a 2),

---

[10] As it happened, Maxim was able to find data on the average earnings of persons in a grouping of eleven jobs ("telemarketers and related workers") in Maine, and in a grouping of ten jobs (the foregoing group minus telemarketers) nationally. *See* Record at 562. However, he found no data pertaining solely to newspaper carriers. *See id*. Thus, he remained unable to answer the question posed.

9

504-05, 507-08 (admitting, on cross-examination, that some PCA work is performed at a 2 and other such work is performed at a 3, but he did not have data as to how many jobs were performed at each level). This type of equivocal testimony cannot stand as substantial evidence in support of a Step 5 finding that the plaintiff can perform work existing in significant numbers in the national economy.

Reversal and remand accordingly are warranted.

### B. Asserted RFC Errors

The plaintiff alternatively seeks reversal and remand on the basis of several asserted errors in the administrative law judge's calculation of her RFC. *See* Statement of Errors at 2-9. These are that the administrative law judge (i) erred in finding her mental impairments non-severe, (ii) failed to consider the combined effect of all of her impairments, severe and non-severe, (iii) erred in expressly refusing to consider evidence from her chiropractor (Richard S. Horowitz, D.C.) regarding her RFC, and (iv) erred in rejecting the opinion of a Disability Determination Services ("DDS") examining consultant (Gavin Ducker, M.D.) that her combination of mental and physical impairments would render full-time employment very difficult for her. *See id.*[11] All of these points were made during the plaintiff's first appeal in 2004. *See* Plaintiff's Itemized Statement of Specific Errors ("Old Statement of Errors") (Docket No. 10), *Lewis v. Barnhart* (Civil No. 04-62-B-W), at 1-4, 6-7, 11-12. At oral argument regarding that appeal, the plaintiff's representative waived her claim regarding handling of Dr. Horowitz's opinion. *See Lewis*, 2004 WL 2677211, at *2 n.3. I found the remaining points to be without merit. *See id.* at *4-*5.

---

[11] It is not clear whether the plaintiff presses an argument that the administrative law judge also erred in finding other impairments (her gastritis, bilateral carpal tunnel syndrome/tendonitis, back pain and knee pain) non-severe. *See* Statement of Errors at 8-9. To the extent she does, she makes no effort at developed argumentation. *See id.* Hence, I consider those points waived. *See, e.g., Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

### 1.  Cumulative Effect of Impairments; Rejection of Ducker's Opinion

With respect to two of the plaintiff's RFC arguments – that the administrative law judge failed to take into consideration the cumulative effect of her impairments and erred in rejecting the Ducker opinion – she essentially rehashes the points made during the course of her first appeal.  *Compare* Old Statement of Errors at 3-4, 11-12 *with* Statement of Errors at 8-9 & n.10.  These arguments are no more persuasive now than they were then, and I reject them once more for the same reasons.  *See Lewis*, 2004 WL 2677211, at *4-*5.

### 2.  Rejection of Chiropractor's Opinion

The plaintiff fares no better with her argument regarding disregard of the opinion of her chiropractor, Dr. Horowitz.  As he had in his first decision, the administrative law judge rejected Dr. Horowitz's opinion that the plaintiff had no noted mental difficulties and could perform light work with certain postural restrictions on the ground that a chiropractor is not an acceptable medical source. *See* Record at 19, 456; *see also id*. at 264.  The plaintiff asserts that, pursuant to 20 C.F.R. § 404.1513(e)(3), an opinion even of a non-acceptable medical source must be considered to understand how a claimant's impairment affects her ability to work.  *See* Statement of Errors at 9 n.9. The regulation cited does not stand for that proposition.  *See* 20 C.F.R. §§ 404.1513(e)(3), 416.913(e)(3).  Rather, it appears that an RFC opinion of a non-acceptable medical source may, but need not, be taken into consideration.  *See id*. §§ 404.1513(d), 416.913(d) ("[W]e may also use evidence from other sources [including chiropractors] to show the severity of your impairment(s) and how it affects your ability to work."); *see also, e.g., Evans v. Barnhart*, 92 Soc. Sec. Rep. Serv. 568, 573-74 (D.N.H. 2003) ("[W]hile § 404.1513(d) provides that the Commissioner may use evidence from 'other sources' to evaluate the severity of a claimant's impairment, the language of that provision is permissive rather than mandatory.  In other words, it is not at all clear that the ALJ was under any

11

obligation to consider Nurse Thomas's RFC questionnaire."). Accordingly, I am unpersuaded that the handling of Dr. Horowitz's opinion was error.

### 3. Finding of Non-Severity of Mental Impairments

The plaintiff finally posits that the administrative law judge's finding that her mental impairments were non-severe is not supported by substantial evidence of record. *See* Statement of Errors at 2-8. In reconsidering this point, I am persuaded of its merit.

The record, as it stood prior to remand, contained, in relevant part, (i) a Psychiatric Review Technique Form ("PRTF") completed on August 16, 2000 by Disability Determination Services ("DDS") non-examining consultant S. Hoch, Ph.D. finding no severe mental impairment, *see* Record at 227-34, (ii) a report dated August 22, 2002 by DDS examining consultant Edward P. Quinn, Ph.D., *see id*. at 278-81, (iii) a PRTF dated September 16, 2002 by DDS non-examining consultant Thomas A. Knox, Ph.D., finding a severe mental impairment, *see id*. at 282-87, (iv) a mental RFC assessment ("MRFC") dated September 16, 2002 by Dr. Knox, *see id*. at 288-90, (v) a PRTF dated December 6, 2002 by David R. Houston, Ph.D., finding a severe mental impairment, *see id*. at 370-83, and (vi) an MRFC dated December 6, 2002 by Dr. Houston, *see id*. at 384-87. Post-remand, the plaintiff submitted a report dated February 16, 2005 from private examining consultant Brian Rines, Ph.D., in which Dr. Rines opined that the plaintiff's condition met Listings 12.04 (affective disorder), 12.08 (personality disorder) and 12.06 (anxiety-related disorder). *See id.* at 603. Dr. Rines also submitted an MRFC dated February 1, 2005 in which he assessed the plaintiff as markedly limited in a number of work-related mental abilities, including the ability to maintain attention and concentration sufficient to perform work tasks throughout an eight-hour work day and the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. *See id*. at 607.

The administrative law judge's finding that the plaintiff's mental impairments were non-severe is indeed contrary to the weight of the evidence. Only one consultant, Dr. Hoch, opined that her mental impairments were non-severe. However, Dr. Hoch did not have the benefit of the Quinn report (or the later Rines report). His opinion, with which all later consultants who had the benefit of at least the Quinn report disagreed, cannot stand as substantial evidence of non-severity in these circumstances. *See, e.g., Quintana v. Commissioner of Soc. Sec.*, 110 Fed. Appx. 142, 144 (1st Cir. 2004) (greater reliance on reports of non-examining, non-testifying consultants is warranted when those consultants review the reports of examining and treating doctors and support their conclusions with reference to medical findings).[12]

In the circumstances, in which I have already recommended reversal and remand on the basis of the Step 5 errors identified by the plaintiff, I need not and do not consider whether this error, standing alone, would have been harmless. However, I urge the commissioner to remedy it on remand.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for proceedings not inconsistent herewith.

---

[12] In my prior recommended decision, I had found that, although the weight of the Hoch report arguably was lessened by Dr. Hoch's not having seen the Quinn report, "the administrative law judge carefully buttressed his finding of non-severity with his own parsing of the report of Dr. Quinn and his consideration of the range of the plaintiff's activities of daily living, her lack of mental health counseling and her irregular course of treatment with her treating internist." *Lewis*, 2004 WL 2677211, at *4. I found that this analysis sufficed "to illustrate that his conclusion is supported by substantial evidence – *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn." *Id*. I am persuaded that despite the care with which the administrative law judge analyzed the "raw" evidence, he was not qualified, as a layperson, to do so. The question of the severity of the plaintiff's mental impairments, as to which even the experts in this case are sharply divided, does not lend itself to simple, common-sense judgment. *See, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record."); *Stanwood v. Bowen*, 643 F. Supp. 990, 991 (D. Me. 1986) ("Medical factors alone may be used only to screen out applicants whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment. . . . [A]n impairment is to be found not severe only if it has such a minimal effect on the individual's ability to do basic work activities that it would not be expected to interfere with his ability to do most work.") (citations and internal quotation marks omitted).

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of December, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge